
FILED
MAY 2, 2008
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:08-CR-0021 (02) |
| | § | |
| JESUS ANTONIO HERNANDEZ SILVA | § | |
| a/k/a Antonio Hernandez Ruiz | § | |

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS AND AMENDED MOTION TO SUPPRESS

Came for consideration the motion to suppress filed April 15, 2008, and the amended motion to suppress filed April 23, 2008, by defendant JESUS ANTONIO HERNANDEZ SILVA. On April 24, 2008, an evidentiary hearing on the motions was held. Upon consideration of the evidence presented at the hearing, the pleadings, and controlling case law, the undersigned United States Magistrate Judge is of the opinion defendant's motions to suppress should be DENIED.

I.
FACTUAL BACKGROUND

On February 29, 2008, at approximately 11:23 a.m., Texas Department of Public Safety Trooper Darrin Bridges stopped a 1999 Mercury Grand Marquis for speeding. After making the stop, Trooper Bridges noticed the driver, Jesus Antonio Ramirez Villasenor, and the passenger, Villasenor's wife, were nervous. Trooper Bridges also noticed modifications to the windshield of the car they were traveling in, *e.g.*, fresh silicone sealant under the rubber surrounding the windshield, which suggested to him there might be a hidden compartment in the firewall of the

vehicle.[1]  Based on these observations, Trooper Bridges asked Villasenor for permission to search the vehicle, and Villasenor consented.  Because the windshield would have to be removed to search the firewall compartment, Bridges and another trooper escorted Villasenor to the Panhandle, Texas, Department of Public Safety office.  A search of the vehicle uncovered nine bundles of a white crystal powder weighing a total of 4.7 kilograms located in the firewall of the vehicle.

After waiving his Miranda rights, Villasenor gave a statement to drug interdiction officers, informing them that another vehicle was involved in the transportation of the narcotics. Villasenor identified the other vehicle as a black Lincoln Navigator with Oklahoma registration. Villasenor also stated that he was unsure whether this vehicle was ahead of him or behind him, but that there would be a male and female inside.  Trooper Bridges was then asked by one of the drug interdiction officers to contact Oklahoma Highway Patrol (OHP) with this information. Bridges contacted an acquaintance employed by OHP, who in turn contacted an on-duty officer, Oklahoma Trooper Lance Schroyer, who was stationed near a toll booth on Interstate 44 (I-44). Trooper Schroyer then notified another officer who was also stationed near the toll booth, Oklahoma Trooper Darren Potter, of the "be on the lookout" for a black Lincoln Navigator.  As Trooper Schroyer finished communicating this information to Trooper Potter, Potter noticed a black Navigator stopped at the toll booth.  After stopping to watch the vehicle, Trooper Potter observed the vehicle making a lane change from right to left without using a signal, in violation of Oklahoma Statutes title 47, § 11-1401(L), and initiated a traffic stop.

After stopping the vehicle, Trooper Potter approached the female driver, who identified herself as Analy Torres, and asked her to sit in his patrol car.  Torres complied.  After running

---

[1]Trooper Bridges testified that the Mercury Grand Marquis is a popular vehicle for use in drug trafficking because the firewall compartment can be used as a storage area for drugs.  According to Trooper Bridges' testimony, the firewall is accessed by removing the windshield of the Grand Marquis.

record checks on the vehicle registration[2] and Torres' driver's license,[3] Trooper Potter returned to the Navigator to ask defendant SILVA, who was seated in the front passenger seat, for the insurance card. Potter then returned to his patrol car and issued a warning to Torres. Trooper Potter handed Torres the warning and her documents, and, as Torres was getting out of his patrol car, Potter asked Torres whether he could ask her a few questions. Torres said, "Yeah," and Potter then asked her several questions about whether she was carrying drugs or weapons. Torres responded no to all of Potter's questions. Potter then asked Torres if he could search the vehicle. She agreed, replying, "Yeah." At about this time, Trooper Schroyer, who arrived at the scene of the stop prior to Potter's request for consent to search, deployed his drug dog, which alerted to two different areas of the Navigator. No drugs were found in the vehicle; however, the search did uncover an oil change receipt for the 1999 Mercury Grand Marquis that Villasenor had been driving. Defendant SILVA seeks to suppress this oil change receipt.

II.
STANDING

A passenger in a vehicle has standing to challenge the legality of a traffic stop, even if he is not the owner of the vehicle. *Brendlin v. California*, 127 S.Ct. 2400 (2007) (holding a passenger is seized along with the driver and, therefore, has standing to challenge the legality of the seizure). However, a passenger does not have standing to challenge a *search* of a vehicle because a passenger has no expectation of privacy in another's vehicle and, thus, his Fourth Amendment rights are not implicated. *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993); *see also United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003); *United States v.*

---

[2] Torres informed Trooper Potter that she was not sure to whom the Navigator belonged, but that she believed it belonged to a friend of her boyfriend.

[3] Torres did not produce any identification. While she stated she lived in Tulsa, Oklahoma, she did not have an Oklahoma driver's license or identification card. However, she informed Trooper Potter that she had an Arizona driver's license, which Trooper Potter discovered was suspended.

*Cardona*, 955 F.2d 976, 981 (5th Cir. 1992).

In the instant case, defendant SILVA was neither the owner nor the driver of the car.[4] Furthermore, defendant SILVA did not produce or offer, at the hearing, any evidence of a possessory interest in the vehicle. Therefore, as a non-owner passenger in the Navigator, he had no expectation of privacy. *See Cardona*, 955 F.2d at 981; *see also Rakas v. Illinois*, 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). Under this Circuit's law, defendant SILVA has no standing to challenge the search of the Navigator, and the motion to suppress should be denied.

### III.
### PROBABLE CAUSE FOR THE TRAFFIC STOP

Even if defendant SILVA had standing to challenge the search of the Navigator, defendant's motion is without merit because Trooper Potter had probable cause to stop the vehicle due to the traffic violation, *i.e.*, the illegal lane change. A routine traffic stop is analyzed under the guidelines set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is so even though the stop may be premised on more than a reasonable, articulable suspicion. *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993). Under this analysis, the court must determine the reasonableness of the search or seizure by asking (1) whether the officer's action was justified at its inception; and (2) whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878.

As Trooper Potter testified at the hearing, Potter observed the Navigator change lanes immediately after exiting the toll booth without using a turn signal. Such action was a violation of Oklahoma Statutes title 47, § 11-1401(L), which states, "No vehicle shall move from one lane

---

[4] The evidence shows Leonel Olmos, who was not in the vehicle at the time Trooper Potter stopped it, is the registered owner of the Navigator. Defendant has never asserted any ownership interest in the vehicle.

to another unless the way is clear to do so *and upon proper signaling*." Thus, Trooper Potter had probable cause to initiate a stop of the Navigator in light of the traffic violation. Potter processed Torres' and the vehicle's information as quickly as possible; however, the record checks took longer than they might have otherwise due to the fact that Torres had no identification on her and provided vague information regarding her residence. Based on Trooper Potter's testimony at the hearing, as well as the videotape of the stop, Potter detained Torres no longer than was necessary to effect the purpose of the stop. The stop for the illegal lane change was reasonable at its inception and remained reasonable until its termination.

After Trooper Potter handed Torres her warning and documents back, Trooper Potter initiated a consensual encounter. Consensual encounters do not implicate Fourth Amendment protections so long as the individual feels free to leave or terminate the encounter. *United States v. Drayton*, 536 U.S. 194, 201, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002). Torres clearly felt free to leave because she was exiting the patrol car when Potter inquired if he could ask her a few questions, to which she agreed, and she did not re-enter the patrol car until after she consented to the search. The audio portion of the videotape of the traffic stop contains no indication that Torres was intimidated by Potter. In fact, Torres was as compliant as she had been throughout the entire stop. Potter did not badger her into answering his questions or into consenting to a search. Moreover, less than 30 seconds elapsed from the time Potter inquired, "Can I ask you a question?" to the time Torres consented to the search. Torres did not testify at the hearing, and Trooper Potter's testimony regarding the encounter is uncontroverted.

All of Trooper Potter's questions were asked while Potter was sitting inside his patrol car and Torres was standing outside,[5] which indicates Potter was not in an intimidating posture. Furthermore, in response to Potter's questions about whether Torres was transporting any

---

[5]Potter and Torres relative positions are based upon Trooper Potter's testimony at the hearing, as well as upon the sounds heard on the video tape indicating Torres was standing outside the patrol car with the passenger side door open.

cocaine, Torres stated, "Oh no, I wouldn't be driving it." This statement shows that Torres believed nothing would be discovered in a search of the vehicle, a fact borne out by the search, which only produced the oil change receipt. The receipt is not a document Torres would have reason to believe was incriminating. Torres responses to Potter's inquiries also show she understood and spoke English well and that she had no problem understanding Trooper Potter's questions. All of these factors[6] support a finding that Torres' consent to the search was voluntary and occurred pursuant to a consensual encounter. Thus, the search did not violate the Fourth Amendment.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that both the motion to suppress and the amended motion to suppress filed by defendant JESUS ANTONIO HERNANDEZ SILVA be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of May 2008.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[6] The Fifth Circuit has enunciated the following multi-factor test for determining whether consent is voluntary: 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found. *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)(citing *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993)). "The government bears the burden of proving, by a preponderance of the evidence, that the consent was voluntary." *Shabazz*, 993 F.2d at 438.

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. This case is set for docket call on Monday, May 12, 2008. Consequently, the time in which to file objections is shortened. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is **on or before Friday, May 9, 2008, by noon.**

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).